UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THOMAS O'CONNOR,                :
                                :
    Plaintiff,                  :
                                :
V.                              :   CASE NO. 3:00CV339 (RNC)
                                :
LYNNE B. PIERSON, ET AL.,       :
                                :
    Defendants.                 :

RULING AND ORDER

In January 2000, Thomas O'Connor brought this action in Connecticut Superior Court against the Wethersfield Board of Education and others challenging the Board's refusal to permit him to return to work as a teacher unless he first underwent a psychiatric evaluation and signed a release permitting the Board to obtain all his medical records. In Count V of the complaint, brought pursuant to 42 U.S.C. § 1983, plaintiff claimed that the Board's action violated his rights under the Due Process Clause of the Fourteenth Amendment. Defendants removed the case to this Court. In July 2000, the parties filed cross-motions for summary judgment, which were referred to Magistrate Judge Martinez. While those motions were pending, plaintiff commenced another action against the Board in Superior Court asserting claims under state law, including a common law claim for invasion of privacy. In February 2001, the Magistrate Judge recommended that defendants' motion for summary judgment be granted and plaintiff's motion be denied. In March 2001, her recommended ruling was adopted in substantial part, leaving only plaintiff's substantive due process claim and the pendent state law

claims. In September 2002, the parties filed supplemental papers renewing their cross-motions for summary judgment on the substantive due process claim. For the reasons discussed below, defendants' motion for summary judgment on the substantive due process claim is granted, plaintiff's motion is denied, and the pendent state law claims are remanded to Superior Court.[1]

I. Facts

The essential facts are undisputed. Plaintiff is a long-time teacher and track coach at Wethersfield High School. In February 1999, the Board received complaints about his use of inappropriate language, interaction with students, and performance of his duties. As a result of those complaints, he was placed on administrative leave with pay pending an investigation.

During the course of the investigation, plaintiff's cardiologist informed the Board that, from a cardiac standpoint, plaintiff could return to work. However, the cardiologist expressed concern about plaintiff's anxiety and the affect this could have on his health. The cardiologist strongly recommended that this concern be taken up with plaintiff's primary care physician.[2]

In November 1999, at the close of the investigation, Superintendent of Schools Lynne B. Pierson notified plaintiff that his conduct was unacceptable, but that his employment would not be

---

[1] Plaintiff recently obtained a jury verdict in the second state court action on his common law invasion of privacy claim.

[2] Plaintiff had previously suffered from heart disease and undergone open heart surgery with coronary bypass grafting. The cardiologist informed the Board that in his opinion, plaintiff's depression and anxiety had played a role in the heart disease.

terminated because of his many years of service. As a result of that decision, plaintiff was removed from administrative leave and placed on sick leave.

Plaintiff was informed that before he would be permitted to return to work, he would have to submit written certification from his doctor confirming that he was medically fit. In addition, based on his cardiologist's report, he was directed to contact Dr. Harold Schwartz, a board certified psychiatrist, to schedule a mental health evaluation.

Plaintiff met with Dr. Schwartz in January 2000. At the conclusion of the session, Dr. Schwartz informed him that he would have to return to undergo psychological tests. Dr. Schwartz asked plaintiff to sign a release for all his medical records, including records of treatment he received several years earlier for alcoholism. Plaintiff refused to sign the release and cancelled his next appointment with Dr. Schwartz.

Dr. Schwartz informed the Board that he could not complete an evaluation without examining the plaintiff further and reviewing all his medical records. On January 20, 2000, the Board notified plaintiff that continued refusal to cooperate with the evaluation would result in disciplinary action, up to and including termination.

In response, plaintiff submitted letters to the Board from physicians attesting to his fitness. Plaintiff's cardiologist wrote that plaintiff was capable of returning to work and that his anxiety posed no significant risk to his cardiac condition. Plaintiff's

primary care physician wrote that plaintiff was not "mentally unfit" to return to work. Dr. Les Smith, a psychiatrist who met with the plaintiff twice, informed the Board that plaintiff was not disabled by a psychiatric disorder and was able to return to work. Plaintiff suggested that defendants could pose to Dr. Smith "whatever reasonable questions [they] might have concerning [plaintiff's] work capacity."

Plaintiff's letters did not satisfy the Board and this action ensued.[3]

II. Discussion

The substantive component of the due process guaranteed by the Fourteenth Amendment provides some protection for plaintiff's privacy interest in his medical records,[4] and property interest in his job.[5] The question is how much. Plaintiff contends that his

---

[3] While this litigation was pending, the Board agreed to permit plaintiff to consult with a different psychiatrist, Dr. Harold Zonana, and to sign a more narrowly-drawn waiver permitting only Dr. Zonana, and not the Board, to review plaintiff's medical records. Dr. Zonana concluded that plaintiff could return to work, and plaintiff did so in January 2002.

[4] See Whalen v. Roe, 429 U.S. 589, 599 (1977); see also Doe v. City of New York, 15 F.3d 264, 266-267 (2d Cir. 1994) ("[T]he right to confidentiality includes the right to protection regarding information about the state of one's health."); United States v. Westinghouse Electric Corp., 638 F. 2d 570, 577 (3d Cir. 1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection.").

[5] See Gargiul v. Tompkins, 704 F.2d 661 (2d Cir. 1983) (substantive due process rights of female teacher were violated when Board required her to submit to medical examination by male doctor even though examination by male doctor was against her "creed" and she offered to pay for examination by female doctor of Board's choosing), vacated on other grounds, 465 U.S. 1016 (1984).

right to substantive due process protected him against being compelled to disclose highly personal information in the records of the facility where he received treatment for alcoholism (the "Arms Acres file").[6] He also contends that his right to substantive due process protected him against being required to undergo evaluation and tests by Dr. Schwartz, the Board's psychiatrist, particularly after he gave the Board the letter from his psychiatrist, Dr. Smith, and offered to make Dr. Smith available to the Board for follow-up questions. The Board counters that the conditions it placed on plaintiff's return to teaching did not violate his right to substantive due process because they were reasonably related to serving its legitimate interest in ensuring he was fit to return.

A. Standard of Review

The parties disagree about the standard of review that should be applied to the Board's actions. Plaintiff contends that both parts of his due process claim, that is, both the privacy- and property-based parts of the claim, command strict, compelling interest scrutiny. The Board contends that a deferential rational basis test applies. I think the privacy-based claim calls for an intermediate standard of review and that the property-based claim is governed by a rational basis test.

Plaintiff's argument in favor of applying strict scrutiny to his privacy-based claim rests on Roe v. Wade, 410 U.S. 113 (1973),

---

[6] The file contains plaintiff's responses to questions such as: "How did you learn about sex? Explain."; "Have you ever masturbated?"; "Have you ever had any traumatic sexual experiences?"; "Describe your relationship with present partner (problems)"; "Have you ever thought about suicide?"

where the Court recognized a woman's fundamental right to personal autonomy in deciding whether to terminate a pregnancy. The interest at issue here, in contrast, involves the "confidentiality branch of the right to privacy." Barry v. New York, 712 F.2d 1554, 1559 (2d Cir. 1983); see Roe, 410 U.S. at 155; 162-63 (1973). The Second Circuit has stated that when state action impinges on the confidentiality of personal matters, "some form of intermediate scrutiny or balancing approach is appropriate as a standard of review." See Doe, 15 F.3d at 269; Strong v. Board of Educ., 902 F.2d 208, 211 (2d Cir. 1990); Barry, 712 F.2d at 1559.

Plaintiff's argument in favor of applying strict scrutiny to his property-based claim finds no support in case law. Assuming substantive due process protects a public employee's property interest in his job against arbitrary action by his employer, it provides no protection against employer actions that are reasonably related to serving legitimate state interests.

B. Analysis

Plaintiff contends that the actions of the Board violated his right to substantive due process for three reasons: no legitimate interest was served by requiring the highly personal information in the Arms Acres file to be disclosed to anyone; there was no need to disclose that information to the Board; and the broad release the Board required plaintiff to sign did not comport with 42 C.F.R. § 2.31, which restricts the ability of a federally funded alcohol treatment facility to disclose patient records. Each argument is addressed in turn.

Disclosure of Records

The Arms Acres file contains information that is highly personal in nature and plaintiff's interest in maintaining the confidentiality of the information is therefore entitled to substantial weight. Nevertheless, the Board was justified in requiring plaintiff to produce the file in connection with its evaluation of his fitness to return to work as a teacher. The Board acted reasonably in requiring plaintiff to undergo a psychiatric evaluation in light of its receipt of information from plaintiff's cardiologist indicating that plaintiff's psychological condition could compromise his health. Plaintiff was required to produce the Arms Acres file only after Dr. Schwartz informed the Board that he needed the records to complete an evaluation. There is no evidence that Dr. Schwartz's insistence on reviewing the records was a departure from standard practice, and although the Board could have chosen to withdraw its demand for the records once plaintiff submitted his physicians' statements that he was fit to teach, it was not required to waive its right to obtain an independent assessment by a psychiatrist of its choosing.[7]

Board Review of Records

Plaintiff argues that even assuming the Board was justified in requiring him to produce the Arms Acres file for review by Dr. Schwartz, no legitimate interest was served by requiring him to produce the file for review by the Board itself. As the entity with

---

[7] In Gargiul, the Court found it significant that the plaintiff offered to see any female physician of the Board's choosing.

the responsibility of determining plaintiff's fitness to return to work, however, the Board had a legitimate interest in reserving a right to review the file itself in light of any findings and recommendations Dr. Schwartz might make. Plaintiff has not shown that this legitimate interest was outweighed by his interest in preventing the Board from having access to the file. Importantly, state law requires employers to respect the confidentiality of employees' medical records. See Conn. Gen. Stat. § 31-128c (prohibiting employers from keeping medical records in personnel files); see also § 31-128f (prohibiting employers from disclosing to third parties personnel file information without authorization). Plaintiff presents no evidence that the Board could not be relied on to comply with these requirements.

Release Form

Plaintiff argues that the Board violated his right to substantive due process by requiring him to sign a broadly worded release that encompassed the Arms Acres file but failed to contain all the things required by the applicable federal regulation, 42 C.F.R. § 2.31.[8]  As the Board points out, however, the release

---

[8] Under 42 C.F.R. § 2.31, a written consent to disclosure must include:
   (1) The specific name or general designation of the program or person permitted to make the disclosure.
   (2) The name or title of the individual or the name of the organization to which disclosure is to be made.
   (3) The name of the patient.
   (4) The purpose of the disclosure.
   (5) How much and what kind of information is to be disclosed.
   (6) The signature of the patient . . . .
(continued...)

plaintiff was required to sign was not illegal; it was a proper form for obtaining his other medical records. Moreover, if plaintiff signed the release provided by the Board and Arms Acres rejected it as insufficient, there is no reason to think the Board would not have obtained the records by means of a release that complied with the regulation.

III. Conclusion

Accordingly, defendants' motion for summary judgment as to Count V is granted, plaintiff's cross-motion is denied, and the remaining counts are remanded to the Superior Court.

So ordered this 10th day of December 2003.



Robert N. Chatigny
United States District Judge

---

[8](...continued)
(7) The date on which the consent is signed.
(8) A statement that the consent is subject to revocation at any time . . . .
(9) The date, event, or condition upon which the consent will expire if not revoked before. . . .